# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

———————————————————————
                                            )

**KEITH WINFIELD,**                   )

                              )

         **Petitioner,**        )

                              )        **Civil Action No.**

     **v.**                       )        **11-11891-FDS**

                              )

**STEVEN J. O'BRIEN,**          )

                              )

         **Respondent.**     )
———————————————————————)

## MEMORANDUM AND ORDER ON
## PETITIONER'S PETITION FOR A WRIT OF HABEAS CORPUS

**SAYLOR, J.**

This is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner Keith Winfield was convicted in Middlesex Superior Court on November 15, 2007, of two counts of forcible rape of a child under the age of sixteen, one count of indecent assault and battery on a child under the age of fourteen, and one count of assault and battery of a child causing serious bodily injury. He is currently serving a term of life imprisonment. After the Massachusetts Appeals Court affirmed his conviction, he filed a petition for habeas relief pursuant to 28 U.S.C. § 2254.

Winfield sets forth two grounds for relief in his petition. First, he contends that the evidence at trial was insufficient to support his conviction under *Jackson v. Virginia,* 443 U.S. 307 (1979), in violation of the Due Process Clause of the Fourteenth Amendment. Second, he contends that his rights under the Confrontation Clause of the Sixth Amendment were violated when he was precluded from impeaching the victim's mother with evidence of her pending criminal charges. For the reasons set forth below, the petition for a writ of habeas corpus will be

denied.

## I.      Background

### A.      Factual Background

The facts surrounding the crime that led to petitioner's conviction are set out in the

decision of the Massachusetts Appeals Court.  *See Commonwealth v. Winfield*, 76 Mass. App.

Ct. 716 (2010).  Only the basic facts are set forth here.

The victim was born in 2003.  She was Winfield's niece.  On the morning of October 13,

2005, the victim's mother dropped her off at Winfield's home for babysitting.  Prior to dropping

her off, her mother had changed her diaper and noticed nothing about her genital or anal area.

During the day, she made four calls to Winfield's home.  Winfield answered the phone twice.

The first time, he informed the mother that his wife had gone to get coffee and would return

soon; the second time, he assured her that the victim was fine.

The victim's grandmother picked her up that afternoon.  At the time, both Winfield and

his wife were home and the victim was sleeping.  After a short time, the victim woke up and ran

to her grandmother.  She cried the entire way home.  Once inside the home, her grandmother

changed her diaper and found that her vaginal area was red and puffy.

The victim's mother returned that evening and changed her diaper twice.  During the first

diaper change, the victim cried and appeared to be in pain.  Her genital area was very red.

During the second diaper change, the mother noticed that the victim's vaginal and anal areas

were bleeding and her skin in the area was peeling.

The following morning, the mother took the victim to a doctor, who opined that the

victim had been raped.  At the doctor's suggestion, the mother took the victim to Children's

Hospital.  A team of physicians examined the victim and concluded that she had second and third degree burns on and inside her genitals and anus, as well as three tears, which collectively indicated impalement by a hot instrument.  In addition, she had multiple bruises on her head, nipple, and back.  A CAT scan revealed a large skull fracture on the back of her head and bleeding near her brain.  She was transferred to Shriners Hospital for Children, where she remained for a month.

On October 15, 2005, Winfield met with an emergency response worker and a detective. He stated that he was home from October 11 to 13, while his wife was babysitting the victim. He confirmed that they were the only caretakers.  He also claimed that he changed the victim's diaper once, found that her vaginal area was swollen, called his wife, and then concluded that it was a diaper rash.

On November 7, 2005, Winfield went to the police station where he was interviewed.  He stated that he was home on October 13 and there were no visitors.  He was alone with the victim and his own eight-month-old daughter for nearly an hour in the middle of the day.  He admitted that he did not get along with the victim's mother and stated that he "would have never, ever, ever, ever wanted to take on another child."

**B.**     **Procedural Background**

On November 15, 2007, a state-court jury convicted Winfield of two counts of forcible rape of a child under the age of sixteen, one count of indecent assault and battery on a child under the age of fourteen, and one count of assault and battery of a child causing serious bodily injury.  The judge sentenced him to concurrent life terms on the rape charges and concurrent nine to ten year sentences on each the remaining charges.

3

Winfield appealed his conviction to the Massachusetts Appeals Court.  He contended that the judge erred by (1) denying his motion for a required finding of not guilty at the close of the Commonwealth's case; (2) permitting inflammatory photographs of the victim's injuries into evidence; (3) redacting a portion of his taped statement to the police; and (4) refusing to allow him to impeach the victim's mother for bias with her pending criminal charges.  The Appeals Court rejected these arguments and affirmed his conviction.  The Supreme Judicial Court denied his application for leave to obtain further appellate review.  He filed the petition for habeas corpus on October 26, 2011.

## II.    Analysis

A federal court may not grant an application for a writ of habeas corpus for a person in state custody unless the state court decision is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the decision was an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  Factual determinations made by the state court are presumed correct and a petitioner bears the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  The presumption of correctness applies to both state trial and appellate court factual determinations.  *See Sumner v. Mata*, 449 U.S. 539, 545-47 (1981).

### A.    The Application of *Jackson v. Virginia*

Petitioner contends that there was insufficient evidence to support his conviction in violation of the Due Process Clause of the Fourteenth Amendment.  In support of this contention, he argues that the Commonwealth's case was based upon circumstantial evidence, and that

Appeals Court's finding as to the sufficiency of the evidence required impermissibly great inferential leaps.  Specifically, petitioner contends that the evidence was insufficient to identify him as the perpetrator, rather than his wife.

In determining whether evidence is sufficient to uphold a conviction, the relevant constitutional question is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  As here, when a state court has reviewed a challenge to the sufficiency of the evidence under the appropriate constitutional standard, a federal court may overturn that decision "only if the state court decision was 'objectively unreasonable.'" *Cavazos v. Smith*, 132 S.Ct. 2, 4 (2011); *see also Leftwich v. Maloney*, 532 F.3d 20, 23 (1st Cir. 2008) (holding that the "state court's decision is not vulnerable unless it evinces some increment of incorrectness beyond mere error").  However, when "the evidence viewed in the light most favorable to the verdict gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence of the crime charged, [the] court must reverse the conviction." *O'Laughlin v. O'Brien*, 568 F.3d 287, 301 (1st Cir. 2009) and *United States v. Flores-Rivera*, 56 F.3d 319, 323 (1st Cir. 1995).

Here, the Appeals Court determined that "the evidence, viewed in the light most favorable to the Commonwealth, permitted a rational trier of fact to find the defendant guilty of the indictments." *Commonwealth v. Winfield*, 76 Mass. App. Ct. 716, 723 (2010).  The Appeals Court concluded that the evidence presented against defendant allowed a rational jury to find him guilty, beyond a reasonable doubt. *See Cavazos*, 132 S.Ct. at 4; *Jackson* , 443 U.S. at 319.

As the Appeals Court noted, the primary evidence presented against defendant included

both medical evidence of the victim's injuries and his recorded police interview.  First, the Appeals Court found that the jury could have concluded that the burns and skull fractures were inflicted around midday on October 13, 2005, and that the victim likely would have cried when she suffered these injuries.  Based on defendant's recorded statements, he was home alone around midday with the victim and his eight-month-old daughter on the day the injuries were inflicted.  As a result, defendant had access to the victim at the time the injuries were inflicted without the presence of another adult to hear the victim cry.  Second, in addition to access, defendant had the means to commit the crime, as a small curling iron was found in the bathroom.  As the Appeals Court noted, the jury could have found that the victim's burns were consistent with the same shape and size of a small hot curling iron.  Third, the jury also properly considered the fact that defendant expressed displeasure over the presence of the victim in his home.  He stated in his interview that he never wanted his wife to care for the victim and he admitted that he disliked the victim's mother.  The jury could thus reasonably infer that defendant was hostile towards the victim, which is relevant to motive.  Under the circumstances, the Appeals Court was not "objectively unreasonable" in its determination that viewing the evidence in the light most favorable to the Commonwealth, a rational juror could have found defendant guilty beyond a reasonable doubt.  *See Cavazos*, 132 S. Ct. at 4; *see also Stewart v. Coalter*, 48 F.3d 610, 615-16 (1st Cir. 1995) ("Guilt beyond a reasonable doubt cannot be premised on pure conjecture.  But a conjecture consistent with the evidence becomes less and less a conjecture, and moves gradually toward proof, as alternative innocent explanations are discarded or made less likely.") .

Petitioner contends that there was no meaningful distinction, from an evidentiary standpoint, between him and his wife.  However, there was evidence that defendant was present,

and alone, when the victim's injuries were incurred.  In addition, the evidence clearly showed that defendant, not his wife, expressed displeasure with the victim's mother and watching over the victim.

The additional evidence pointed to by petitioner for the proposition that his wife may have caused the victim's injuries is not persuasive.  First, the testimony of Dr. Alice Newton that the skull fracture and burns likely occurred around the same time period simply reinforced the other evidence that defendant caused the victim's injuries.[1]  Second, the evidence related to "issues" between defendant's wife and the victim's mother was marginal at best.  The victim's mother testified that her relationship to defendant's wife was not great in the past, but had improved after the victim's birth.  These two inconclusive pieces of evidence do not create a situation where "the evidence viewed in the light most favorable to the verdict gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence of the crime charged."  *See O'Laughlin*, 568 F.3d at 301.[2]  Accordingly, this Court finds that the decision of the Appeals Court was not an unreasonable application of *Jackson*.

---

[1] Specifically, petitioner stated in his memorandum that "[Dr. Newton] opined that the skull injury was sustained within three days prior to the CAT scan (which occurred around 1:00 p.m. on the 15th), and that the burn injuries were 'approximately 24 to 36 hours old' when she saw the child around midnight on the 14th going into the 15th."  (Pet. Mem. at 9).  Petitioner argues that this evidence shows a range of time that included the period when defendant's wife was with the baby.  However, that alone does not preclude the jury from making a rational determination, based on all of the evidence at trial, that defendant caused the victim's injuries.  *See Leftwich v. Maloney*, 532 F.3d 20, 27-28 (1st Cir. 2008) ("In order to pass muster under sufficiency principles, evidence need . . . [not] rule out every hypothesis inconsistent with a guilty verdict.").

[2] As respondent points out, petitioner essentially asks this Court to review individual pieces of evidence in the light most favorable to *petitioner*.  However, it is well-established that this Court's review is limited to assessing whether, after reviewing the evidence in the light most favorable to the *prosecution*, any rational jury could have found the defendant guilty beyond a reasonable doubt and whether the state court's application of *Jackson* was objectively unreasonable.  *Cavazos*, 132 S.Ct. at 4.

B.      **Sixth Amendment Right to Cross-Examination**

Petitioner further contends that the trial judge violated his constitutional rights by improperly constraining cross-examination. Specifically, he complains that his counsel's cross-examination of the victim's mother was improperly limited when the judge precluded his counsel from asking her about her pending criminal charges. After allowing defendant to conduct voir dire as to whether there was evidence of bias, the trial judge excluded that line of inquiry, concluding that the criminal complaint was not probative of bias, and therefore not appropriate for cross-examination. The Appeals Court found no error and no deprivation of petitioner's Sixth Amendment rights.

Under the Confrontation Clause of the Sixth Amendment, a defendant has a right to conduct reasonable or otherwise appropriate cross-examination to expose facts from which the jury may draw inferences relating to a witness's reliability. *Olden v. Kentucky*, 488 U.S. 227, 231 (1988) (per curiam); *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974). Cross-examination may attempt to show "that the witness' character is such that he would be less likely than the average trustworthy citizen to be truthful in his testimony" or it may "reveal[] possible biases, prejudices, or ulterior motives." *Davis*, 415 U.S. at 316.

Again, this Court must decide if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). In *Delaware v. Van Arsdall*, the Supreme Court explained that "[a] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness. . . ." 475 U.S. 673, 680

(1987).   However, the Court also recognized that "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."  *Id.* at 679; *see also U.S. v. Gomes,* 177 F.3d 76, 81-82 (1st Cir. 1999) ( "[I]n a few extreme cases, the Supreme Court has invoked [the Confrontation Clause] to overturn state restrictions on cross-examination or impeachment.  However, such a challenge is tenable only where the restriction is manifestly unreasonable or overbroad").  As set forth in *Van Arsdall,* a reviewing court must ask two questions:  (1) whether the limitation prejudiced the examination of that particular witness, and if so (2) whether the error was harmless.  *See DiBenedetto v. Hall*, 272 F.3d 1, 10 (1st Cir. 2001) (citing *Van Arsdall*, 475 U.S. at 679-80).

Here, the Appeals Court determined that defendant was not denied his constitutional right to cross-examination because "the criminal complaint was not probative of bias, and therefore not appropriate for cross-examination."  *Winfield*, 76 Mass. App. Ct. at 727.  The Appeals Court reasoned that the trial judge allowed defendant to conduct a voir dire to determine whether the mother's expected testimony was motivated by expectations of favorable treatment by the district attorney's office and found that it was not.  It agreed with the trial judge that the voir dire failed to show bias.  That determination was reinforced by the fact that the mother's trial testimony did not differ from her pretrial statements.  Her statements to the police and her testimony before the grand jury, which both occurred before the criminal complaint issued against her, were consistent with her account of events at the time of trial.

That Appeals Court decision was not objectively unreasonable.  *See Dolinger v. Hall*,

302 F.3d 5, 10 (1st Cir. 2002) (quoting *Williams v. Taylor*, 529 U.S. 363, 412-13 (2000)) ("As the Appeals Court 'identifie[d] the correct governing legal principle from [the Supreme] Court's decisions,' we need only inquire as to whether it 'unreasonably applie[d] that principle to the facts.'").  The victim's mother repeatedly asserted that she did not expect special treatment from the district attorney's office.  *See DiBenedetto*, 272 F.3d at 10.  Indeed, she testified that did not even know that her pending criminal charges were being prosecuted by the same office.  Furthermore, her testimony at trial was consistent with her prior testimony before the criminal charges were filed.  Finally, as both petitioner and respondent point out, the jury heard evidence that the victim had pre-existing injuries identified by the police and the Department of Children and Families, which would have permitted the jury to make an inference that the victim's mother was already possibly motivated to cooperate with these authorities.  *See Morgan v. Dickhaut*, 677 F. Supp. 2d 424, 443-45 (D. Mass. 2010), *aff'd* 677 F.3d 39 (1st Cir. 2012) (denying habeas relief to petitioner who claimed that the judge impermissibly limited his cross-examination with regard to the witness's vulnerability to criminal prosecution, which may have motivated him to curry favor with the prosecution).  As a result of the mother's statements during the voir dire examination, the consistency of her testimony prior to criminal charges, and the admitted evidence of her potential bias to cooperate with the prosecution, the jury would not have received "a significantly different impression" of the mother had the excluded line of questioning been allowed.  *See DiDenedetto*, 272 F.3d at 10.  Accordingly, the decision of the Appeals Court was not unreasonable, and the claim based on the limitation on cross-examination is without merit.

**III.**     **<u>Conclusion</u>**

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.

**So Ordered.**

<u>/s/ F. Dennis Saylor</u>
F. Dennis Saylor IV
United States District Judge

Dated:  November 8, 2013